HARRY A. WRIGHT *vs.* MAYNARD CORSET COMPANY.

Hampden.   January 7, 1918. — February 25, 1918.

Present: RUGG, C. J., DE COURCY, CROSBY, & PIERCE, JJ.

*Contract,* Construction, Performance and breach.   *Evidence,* Opinion: experts. *Practice, Civil,* Exceptions, Conduct of trial.

In an action to recover the amount which should have been payable to the plaintiff as royalties on the use of a trademark called "Cresco" in the sale of a certain kind of corset with a disconnected waist, it appeared that the plaintiff had sold to the defendant the right to use the trademark, agreeing that, so long as the defendant observed and fulfilled the terms and provisions of the agreement, the plaintiff would not engage directly or indirectly in the manufacture of corsets, and that the defendant "hereby agrees that it will pay [the plaintiff] royalties upon the sales made hereafter by [the defendant] of all corsets branded 'Cresco' having a disconnected waist, . . . and will continue to pay said royalties until [the plaintiff] has received from said royalties a total sum of" $7,500, "and covenants and agrees that until such time as the full amount of royalties herein agreed upon shall be paid, that it will use its utmost endeavors to manufacture and sell such corsets."   About a year and a half later the defendant reported sales upon which the total royalties due the plaintiff and unpaid amounted to $66.62, and the plaintiff asserted that the defendant had violated its agreement to "use its utmost endeavors to manufacture and sell such corsets" by doing practically nothing to sell corsets under the trademark "Cresco" and claimed as damages the amount of the royalties which the plaintiff would have received if the contract had been performed according to its alleged true intent.   The defendant contended that the only effect of its violation of the agreement was to release the plaintiff from his obligation not to engage in the manufacture and sale of corsets.   *Held,* that the covenant of the defendant to use its utmost endeavors to manufacture and sell corsets under the plaintiff's trademark was an affirmative and independent

agreement for the plaintiff's benefit, for the breach of which he was entitled to recover such a sum of money as would have been due and payable to him had the covenant been kept and performed.

In the action above described, a witness for the plaintiff, who was an expert in regard to the sale of "Cresco" corsets, was asked, subject to the defendant's exception, "What is the way to sell these Cresco corsets? How should they be sold? How should they be got on the market?" and was permitted by the presiding judge to answer the questions. It appeared that the "Cresco" corset was a "specialty" corset which was sold on the market by methods not common in the sale of standard corsets. *Held*, that the jury could not be presumed to have knowledge of unusual and uncommon forms of trade bargains, and therefore that the subject was a proper one for expert testimony, the evidence being helpful, if not necessary, to assist the jury to determine whether the defendant had used its utmost endeavors to manufacture and sell the "Cresco" corset.

At the trial of an action for the alleged breach of a contract in writing, certain evidence was admitted by the presiding judge, subject to the defendant's exception, which might have been excluded as relating to oral conversations that afterwards were merged in and superseded by the contract in writing, and the presiding judge said, "I think [the defendant's counsel] was right there. I will let the evidence stay in subject to your exception; then I will talk with you later about what would be the correct construction of this contract. I think that is better than for us to pause to discuss the question now. We can do it more intelligently later on." The matter was not again called to the attention of the judge, who in his charge instructed the jury in accordance with the contention of the defendant. *Held*, that the defendant had no ground for exception.

The ordinary rule here was mentioned that the denial by a presiding judge of a motion for a new trial is not a matter of exception.

CONTRACT to recover as damages the amount of royalties which the defendant under its agreement described in the opinion ought to have earned for the plaintiff by the sale of the "Cresco" corset. Writ dated July 7, 1913.

The defendant's answer contained a claim in recoupment.

In the Superior Court the case was tried before *Aiken*, C. J. The material evidence is described in the opinion. The judge submitted to the jury two questions, which with the answers of the jury were as follows:

"1. If the contract was performed according to its true intent, what amount of royalties would be due Wright?" The jury answered, "$1,776.93."

"2. What sum, if any, is due the Maynard Corset Company by way of recoupment?" The jury answered, "Nothing."

The jury returned a verdict for the plaintiff in the sum of $700; and the defendant alleged exceptions, as explained in the opinion.

The case was submitted on briefs.

*J. W. Sheehan*, for the defendant.

*A. L. Green & F. F. Bennett*, for the plaintiff.

PIERCE, J. In January, 1912, the plaintiff and the defendant entered into negotiations for the sale to the defendant of the business, good will, and registered trademark "Cresco" then owned by the Cresco Corset Company, a corporation organized, incorporated, and controlled by the plaintiff. The "Cresco" corset is a corset with a disconnected waist, which any one may make if use is not made of the trademark "Cresco" in connection with its sale. The defendant is a corporation, and at the time of the negotiations and of the contract which followed was engaged in the manufacture and sale of "standard" as distinguished from "specialty" corsets, although it was familiar with "Cresco" corsets, having manufactured them for a considerable time for the plaintiff.

On January 31, 1912, the Cresco Corset Company conveyed to the defendant the business and good will of the corporation, including the registered trademark "Cresco," and on the same day an instrument under seal "for and in consideration of the mutual covenants and agreements," recited: "The first party [the plaintiff] hereby gives, grants and conveys to the second party [the defendant], all his rights, title and interest in and to the manufacturing and selling of corsets, and good will thereof, and further covenants and agrees that so long as the second party observes and fulfills the terms and provisions of this agreement he will not engage in, directly or indirectly, the manufacture or sale of corsets. The second party hereby agrees that it will pay the first party royalties upon the sales made hereafter by the second party of all corsets branded 'Cresco' having a disconnected waist, . . . and will continue to pay said royalties until the first party has received from said royalties a total sum of seven thousand five hundred (7500) dollars. . . . [That it] will keep accurate books of account, showing the number of such corsets sold by the second party, . . . and will render account of such sales to the first party in monthly statements. . . . The second party hereby acknowledges the rights of the first party to corsets having a disconnected waist, and covenants and agrees that until such time as the full amount of royalties herein agreed upon shall be paid,

that it will use its utmost endeavors to manufacture and sell such corsets."

Between the date of the contract and July 1, 1913, the defendant reported sales upon which the total royalties due the plaintiff and unpaid amounted to $66.62. Within this period the plaintiff alleges the defendant violated its agreement to "use its utmost endeavors to manufacture and sell such corsets" by doing "practically nothing" to prosecute the business, and claims therefor damages measured by the royalties it should have received had the contract been performed according to its true intent.

On the other hand the defendant contends that the sole and only effect of its violation of the agreement is to relieve the plaintiff of his covenant and agreement "that so long as the second party observes and fulfills the terms and provisions of this agreement he will not engage in, directly or indirectly, the manufacture or sale of corsets." In support of this contention the defendant argues that the provision of the contract which reads, "The second party hereby acknowledges the rights of the first party to corsets having a disconnected waist," out of an abundance of caution, was inserted "to show that in the event of a breach of the conditions of this contract, the plaintiff had a right to make such corset;" and that the provision "that until such time as the full amount of royalties herein agreed upon shall be paid, that it will use its utmost endeavors to manufacture and sell such corsets," was intended as a limitation upon the right of the defendant to go ahead indefinitely manufacturing and selling corsets with a disconnected waist without stamping them with the trade name "Cresco," and thereby reap whatever benefit might result, without being in any way liable to the plaintiff; while the plaintiff during all the time would be prohibited from engaging directly or indirectly in the manufacture and sale of the corsets.

If we assume the foregoing provisions of the contract were inserted to define the obligation which the party of the second part was required by its covenant to observe and fulfil as a condition precedent to its right to enforce the covenant of the party of the first part not to engage in the manufacture and sale of corsets, we are none the less of the opinion that the covenant of the defendant, to use its utmost endeavors to manufacture and sell such corsets, is also an affirmative and independent agreement, which requires

and calls for the exercise of sound judgment and business energy and activity, in the prosecution of the business to which the agreement relates, to the end that the plaintiff may realize within a reasonable time the most profitable returns in the way of royalties for "Cresco" corsets sold, which is consistent with a prudent and sagacious conduct of the particular business of the defendant.

We do not agree with the contention of the defendant that the agreement to pay royalties and to "continue to pay said royalties" until from said royalties the party of the first part has received a total sum, restricts the measure of damages for breach of the covenant to "use its utmost endeavors," to a sum of money then due and payable to the plaintiff as royalties. We think the measure of damages is such a sum of money in royalties as would have been due and payable had the covenant been kept and performed.

We think the exception to the question to Wright "What is the way to sell these Cresco corsets? How should they be sold? How should they be got on the market?" and to his answer must be overruled. Wright was an expert in the sale of the "Cresco" corsets. The "Cresco" corset is a "specialty" corset which is sold on the market by methods not common in the sale of standard corsets. The jury could not be presumed to have knowledge of unusual and uncommon forms of trade bargaining. Such knowledge was helpful, if not necessary, to assist the jury in determining whether the defendant had used its utmost endeavors to manufacture and sell the "Cresco" corset.

The exceptions of the defendant to the questions and answers as to what was said before the execution of the agreement as to the right of the plaintiff to a corset having a disconnected waist, and also as to whether anything was said about what corsets should be branded "Cresco," must be overruled. In regard to the admission of these questions and answers the presiding judge said: "I think Mr. Sheehan was right there. I will let the evidence stay in subject to your exception; then I will talk with you later upon what would be the correct construction of this contract. I think that is better than for us to pause to discuss the question now. We can do it more intelligently later on." The matter was not again called to the attention of the judge, and the

judge in his charge instructed the jury in accordance with the contention of the defendant.

The refusal to grant a new trial is not a matter of exception.

We have considered the exceptions in their order as argued by the defendant, and find no error.

*Exceptions overruled.*